RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/6/07

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SCOTT BRAME MOFFETT | * | CIVIL ACTION NO. 08-CV-1337 |
| VERSUS | * | JUDGE RICHARD T. HAIK, SR. |
| R. RICK BRYANT AND LAUREN LEE MOFFETT | * | MAGISTRATE JUDGE METHVIN |

*************************************************************

## REASONS FOR JUDGMENT

Scott Brame Moffett (hereinafter referred to as "Plaintiff") has filed the instant lawsuit against District Judge R. Rick Bryant under 42 USC §§ 1983 and 1985. He alleges that Judge Bryant had a conflict of interest which required him to recuse himself from a custody case between plaintiff and his ex-wife. Plaintiff alleges that Judge Bryant's refusal to do so was part of a conspiracy between Bryant and his ex-wife to deprive plaintiff of his civil rights. Plaintiff seeks monetary damages, as well as court costs and attorney fees. Judge Bryant has filed the instant 12(b)(6) Motion to Dismiss on the basis that 1) the Eleventh Amendment affords him immunity from suit in Federal Court; 2) that he is entitled to judicial immunity for his actions while performing his duties as a judge presiding over the custody case; 3) that he is entitled to "absolute immunity" as a witness in the recusal hearing; and 4) that plaintiff has not sufficiently pled a claim under 42 U.S.C. 1985.

## FACTUAL BACKGROUND

Plaintiff, Scott Brame Moffett, is the ex-spouse of defendant, Lauren Lee Moffett and from July 27, 2006, until September 4, 2007, defendant, R. Rick Bryant, was the presiding Judge over the custody proceeding between the Moffetts. While Bryant presided over the custody case, defendant Moffett was awarded domiciliary custody of the parties' minor children during the school months.

During the course of the proceedings, plaintiff Moffett suspected that the defendants maintained an undisclosed social relationship with one another, which ultimately led to plaintiff filing a Motion to Recuse defendant Bryant from the custody proceedings. At the recusal hearing of September 24, 2005, defendant Bryant testified that he and defendant Moffett had only spoken with one another briefly. Based upon the testimony of both of the defendants, the Court denied the Motion to Recuse and defendant Bryant continued to preside over the custody proceedings between Scott and Lauren Moffett.

On September 4, 2007, at the renewed request of the plaintiff, defendant Bryant recused himself from the proceedings. On October 29, 2007, defendant Bryant issued an order of recusal citing as reason "because of his friendship with Lauren Moffett and that after handling the custody case he had contact on a social basis with Lauren Moffett" and that he "has had contact on a social basis with Laura Moffett concerning some non-legal, non-court related topics."

In April of 2008, Judge Robert Wyatt heard the recusal matter again and concluded that defendant Bryant should have recused himself from the case and should have done so on account of the defendants' relationship with one another at the inception. Following the recusal hearing in April, 2008, all of defendant Bryant's orders were set aside and rendered absolute nullities by the newly assigned Judge.

## LAW AND ANALYSIS

*- Standard for 12(b)(6) Motion to Dismiss*

A Rule 12(b)(6) motion is confined to the face of the Complaint. Rule 12(b)(6) motions are "viewed with disfavor and are rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Supreme Court in *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), made clear:

"[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Citation to *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The pleading is reviewed in a light most favorable to the plaintiff resolving every doubt in his favor. The examining court determines merely whether the allegations provide relief on any possible theory. See: *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The plaintiff is afforded the benefit of every reasonable inference that can be drawn from the facts. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct., at 2513; *Matsushita Electric Industry Company v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiff alleges in his complaint that Judge Rick Bryant and Lauren Lee Moffett had been in contact with each other on several occasions prior to his appointment to the case. Plaintiff alleges that Bryant and Moffett lied about the amount of contact that they had with each other and that, because of this false testimony, the motion to recuse was denied and Judge Bryant was allowed to preside over the case. Plaintiff further alleges that he and his attorney looked at telephone records belonging to Lauren Moffett and discovered that defendants had been in contact with each other over fifty (50) times during the period in which Judge Bryant presided over the custody case.

Presuming the facts in the preceding paragraph to be true for the purposes of this motion, this court grants defendant Bryant's Motion to Dismiss in its entirety for reasons set forth below.

- *ELEVENTH AMENDMENT*

The complaint does not specify in which capacity plaintiff sued Judge Bryant. However,

Plaintiff conceded at the hearing on this matter that no claims for damages are sought against Judge Bryant in his official capacity and, thus, the eleventh amendment immunity defense is moot.

## - *JUDICIAL IMMUNITY*

Plaintiff filed suit against defendant Bryant for violations of his civil rights under 42 U.S.C. §1983 and §1985, in addition to Louisiana tort claims. Defendant Bryant asserts entitlement to "absolute" judicial immunity regarding all of the plaintiff's claims.

Plaintiff is correct that, until the motion to recuse was ruled on, Judge Bryant did not have authority to act on the custody case. The filing of a motion to recuse prevents a judge from acting in the underlying case until the motion to recuse is decided. However, plaintiff does not allege that Judge Bryant performed any actions in the custody matter while the motion to recuse was pending. Thus, to the extent that plaintiff claims damages for the decisions of defendant, Bryant, in his judicial capacity (including, but not limited to, the award of domiciliary custody of the children to Lauren Moffett and his decision not to recuse himself from the proceedings), Bryant is entitled to absolute judicial immunity which bars plaintiff from recovering damages allegedly incurred as a result of those decisions.

"A judge will not be deprived of immunity because he was in error, took action maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Brandley v. Keeshan*, 64 F. 3d 196, 200 (5th Cir. 2000). The issue is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978).

Judge Bryant was exercising the authority vested in him by the laws of the State of Louisiana on a case pending before him in the court of general jurisdiction to which he was elected. "Courts unanimously have found that a failure to recuse oneself is a judicial act for purposes of absolute judicial immunity." *Price v. Porter*, 2009 WL 1210509 (W.D. La. 2009) citing *Shepherdson v. Nigro*, 179 F.R.D. 150, 152 (E.D.Pa.1998) and *Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir.1986) "Recusal, appointment of a special judge for a pending case, and the detention of a criminal defendant are not the types of administrative or ministerial conduct for which judicial immunity is unavailable." *Kemp ex rel. Kemp v. Perkins*, 2009 WL 1259024, 2 (5th Cir. 2009). In accordance with judicial immunity jurisprudence, it is clear that Judge Bryant did not act "in the clear absence of all jurisdiction" and, therefore, plaintiff's claims for damages based upon, and arising out of, Bryant's judicial decision not to recuse himself, clearly fall within the judicial immunity doctrine as those decisions were made in his capacity as a judge.

The issue then becomes whether or not defendant Bryant was acting within the scope of his judicial capacity when he testified at the recusal hearing. Plaintiff argues that Louisiana Code of Civil Procedure article 153 provides that Judge Bryant was no longer acting within his capacity as a judge while testifying at the recusal hearing and, thus, is not immune from damages incurred as a result of his testimony therein. Article 153 specifically provides:

> Until a judge has recused himself, or a motion for his recusation has been filed, he has full power an authority to act in the cause.

"[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12, 112 S.Ct.

286 (quoting Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)) "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' A court should look to the particular act's relation to a general function normally performed by a judge. *Id.* at 13.

The Fifth Circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. Davis v. Tarrant County, Tex., 565 F.3d 214, 222 -223 (C.A.5 (Tex.) 2009) (citing Ballard v. Wall, 413 F.3d 510, 515 (5th Cir.2005)).

Under the first factor, whether the precise act complained of is a normal judicial function, this court examines the 'nature and function' of the act, not the act itself. In this case, the issue is whether a presiding judge's testimony at his own recusal hearing is a "normal judicial function." This court is persuaded by the fundamental principles articulated in *Kalina v. Fletcher*, 522 U.S. 118 (1997), as applied to this particular fact pattern. The court in *Kalina* reasoned that, "[t]estifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." The *Kalina* case involved a prosecuting attorney who commenced criminal proceedings by filing three supporting documents in a Washington state court and summarized the evidence substantiating the charge

and swore to the truth of the alleged facts "under penalty of perjury." Based on the certification, the trial court found probable cause. Later, the charges were dismissed on the prosecutor's motion. Focusing on two inaccurate factual statements in the certification, the prosecuting attorney was sued for damages under 42 U.S.C. § 1983. In the instant case, it is of no consequence that the witness in the recusal hearing was a judge, nor that it was a recusal hearing and not some other judicial proceeding.

The nature and function of testifying in court, at a recusal hearing, is that of a witness, not a judicial officer, and it would betray every practical sense of the law in this case to hold otherwise. The mere fact that the witness happens to be the judge sought to be recused does not change the nature and function of his role in the hearing, as that of a witness. Therefore, under the facts of this case, Judge Bryant's testimony at his own recusal hearing cannot be said to have been a normal judicial function for which he is afforded judicial immunity.

Further, although Judge Bryant's actions occurred in the courthouse and the controversy arose out of a case pending before him, his act in testifying did not necessarily "arise directly out of a visit to him in his official capacity" because he was not the presiding judge at the recusal hearing.

- *WITNESS IMMUNITY*

In Louisiana, there is absolute immunity from civil liability for testimony given by a nonparty witness in a judicial proceeding, so long as that testimony is pertinent and material to the issue. *Marrogi v. Howard*, 805 So.2d 1118, 1126 (La. 1/15/02). The immunity afforded to witnesses is absolute because it protects the witness from civil suit regardless of malice or falsity. *Id* at 1125. "[T]he privilege of absolute witness immunity is an exception to tort liability under La. Civ.Code art. 2315. Louisiana courts have narrowly tailored the exception to protect

the particular interests involved. In the case of adverse witnesses, both non-volunteer witnesses and expert witnesses, we have identified the protected interest as the administration of justice and its objective to uncover the truth. To further that interest, Louisiana courts have applied the privilege of witness immunity in defamation actions and retaliation suits against adverse witnesses." *Marrogi*, supra at 1127-1128.

Plaintiff argues that the decision in *Marrogi* was limited to non-party witnesses and, in general, supports the notion that witness immunity is a limited exception. Further, plaintiff argues that Judge Bryant was a party when he testified at the recusal hearing and, as such, is not afforded absolute witness immunity. In *Garry v. Schofield*, 336 F. Supp.2d 1337 (M.D. Ga. 2004), the District Court held that the fact that the state trial judge was represented at a recusal hearing by counsel (as allowed under state law) did not serve to make the judge a party to the underlying case for purposes of habeas relief. As in the *Garry* case, the instant case involves a state judge who was the subject of a recusal hearing. Although the record currently before the court does not reflect whether Judge Bryant was represented by counsel at the hearing, this court believes that the case is analogous and persuasive.

Plaintiff argues that Judge Bryant must be considered a party to the litigation because, otherwise, his testimony as a witness at a recusal hearing would make him a witness "in the cause", which is impermissible under La. C.C.P. Art. 151. However, this court finds that the "cause" as applied to this case, is not the recusal hearing but, rather, was the underlying custody hearing.

The fact is, when taking the plaintiff's allegations as true for the purposes of this motion, the witness, whose actions were the subject of the proceedings, lied under oath and caused the plaintiff damages. As Judge Bryant does not easily fit into a category of witness as addressed by

witness immunity jurisprudence, and in light of the facts of this case in particular, this court does not see any redeeming legal or societal value in protecting that particular testimony from civil liability for any damages resulting therefrom.

Taking the plaintiff's allegations as true for the purposes of this motion, this court finds that under the particular facts of this case, it would not serve the ends of justice to afford witness immunity to Judge Bryant for false testimony at his own recusal hearing. Therefore, insofar as the motion seeks to dismiss claims for damages caused by the alleged false testimony of Judge Bryant at the recusal hearing, Judge Bryant is not afforded absolute witness immunity.

- *FAILURE TO STATE A CLAIM UNDER 42 U.S.C. § 1983*

Two elements must be proved in order to recover under 1983: (1) deprivation of a constitutional right by a defendant, (2) acting under color of law. See *Smith v. Young Men's Christian Ass'n of Montgomery*, 462 F.2d 634, 647 (5th Cir. 1972). The first element requires that plaintiff be deprived of a constitutional right by the defendant. Assuming for the purposes of this motion that the allegations in the plaintiff's complaint are true, this court finds that it is clear that plaintiff's due process rights would be considered to have been deprived by defendant Bryant when he presided over a case in which he should have recused himself. The second element requires that the plaintiff be deprived of that right to due process by a defendant acting under color of law. This court has already addressed Judge Bryant's liability for his actions taken in his judicial capacity. Thus, the only issue left to resolved is whether defendant Bryant was acting under color of law when he testified at his own recusal hearing.

The United States Supreme Court has said that the "traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the

authority of state law.' " *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941) Generally, "state action" and "under color of law" are perceived as alternative ways of expressing the same legal principle. *Greco v. Orange Memorial Hospital Corp.*, 513 F.2d 873 (5th Cir. 1975). There are two parts to deciding if state action is present. First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar v. Edmondson Oil,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-2754, 73 L.Ed.2d 482 (1981).

As addressed previously in this decision, plaintiff's argument is correct that Judge Bryant was not acting within his capacity as a judicial officer when he testified at his own recusal hearing. Therefore, it would be inconsistent to suggest that he was acting "under color of law", as would be necessary to sufficiently state a claim for which relief can be granted under section 1983. As such, plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. 1983 and those claims must be dismissed.

- *CONSPIRACY CLAIMS UNDER 42 U.S.C. § 1985*

Section 1983 embraces traditional notions of immunity, as does Sec. 1985. The same policies that favor granting absolute immunity to judges, prosecutors, and witnesses in 1983 actions require its extension to judges, prosecutors, and witnesses in other sections of the civil rights acts as well. *Mylett v. Mullican*, 992 F.2d 1347 (5th Cir. 1993); *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003).

The Fifth Circuit requires some racial, or otherwise class-based discriminatory animus to state a claim under 42 U.S.C. 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1798, 29 L. Ed. 2d 1049 (1983); *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). To state a cognizable claim under § 1985(3), plaintiff must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (C.A.5 (La.) 2001). The plaintiff must show that the conspiracy was motivated by a discriminatory animus based on race or some other inherited or immutable class characteristic such as gender, religion or national origin or based upon political association or beliefs.

Courts analyze claims under 42 U.S.C. § 1985(2) in two parts. *Kush v. Rutledge*, 460 U.S. 719, 725, 103 S. Ct. 1483, 1487, 75 L. Ed. 2d 413 (1983). The first part deals with conspiracies that interfere with the administration of justice in federal court and does not require race or class-based animus. However, the second part deals with conspiracies that interfere with the administration of justice in state court, and the Fifth Circuit has held that the *Griffin* race or class-based animus requirement of Section 1985(3) applies to such claims. *Daigle v. Gulf States Utilities Co.*, 794 F.2d 974, 979 (5th Cir. 1986) In fact, the Fifth Circuit has gone so far as to say that "[a]n allegation that the defendants are motivated by some class based discrimination is essential to the maintenance of a suit under the second portion of section 1985(2)." *Ryland v. Shapiro*, 708 F.2d 967, 973 (5th Cir. 1983).

Plaintiff's complaint does not include any allegations of race or class-based animus. Plaintiff attempts to manufacture such an allegation based on gender. However, the complaint itself has no such allegation and alleges simply a personal bias based on individual social

contacts. Personal bias is not enough to fulfill the race or class discriminatory animus requirement. Therefore, plaintiff has failed to state a claim upon which relief can be granted against Judge Bryant under 42 U.S.C. 1985 and his claims must be dismissed accordingly.

## **CONCLUSION**

For all of the above and foregoing reasons, and in accordance therewith, to the extent that plaintiff's claims against defendant, R. Rick Bryant, are based on actions and decisions made in performance of his official duties as a state court judge, his lawsuit, with respect to claims under Sections 1983 and 1985 based on such actions, is barred by the doctrine of absolute judicial immunity. Insofar as plaintiff's claims against defendant are based on Judge Bryant's testimony at the recusal hearing, defendant is not protected by witness immunity but, for reasons stated above, plaintiff has nevertheless failed to state claims under Sections 1983 and 1985.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Motion to Dismiss [Court Doc. #17] is GRANTED.

THUS DONE AND SIGNED on this the 6th day of August, 2009.

JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA